## Peter Crans' Appeal.

---

### Assigned Estate of John Loutey.

A creditor secured by a mortgage upon the debtor's real estate was consulted in reference to an assignment proposed to be made by the debtor to give him an opportunity of settling with his general creditors and continuing business, and approved of the plan; thereupon such creditor entered judgment upon the warrant accompanying his mortgage, and the proposed assignment was then executed. The creditor knew that the debtor was allowed to remain in possession of all the assigned property; that the assignee had filed neither bond nor inventory, and was exercising no control over the estate and was allowing the money of the estate to be used in paying the general creditors; that a release to the debtor and assignee from all such creditors was being obtained on a certain basis, and that when it was obtained they were all settled with and the assignee abandoned even the constructive possession of the assigned property and practically reconveyed and redelivered the entire estate back to the debtor, and being consulted beforehand as to such course, he assented to it; and when, having asked the assignee for money, pending the assignment, he was told that "he was to look to the real estate," he expressed no dissent, and remained silent for ten years thereafter. While the assignee was in constructive possession, said creditor received some money from the assigned estate on account of his debt, and thereafter issued execution against the personal property left by the assignee in the possession of the debtor and sold it and applied the proceeds to his claim, and afterwards sold the real estate under his judgment. Thereafter said creditor called upon the assignee to render an account of his trust. *Held,* that the creditor was, under all the circumstances of the case, estopped from claiming any po:tion of the balance due upon his judgment, from the assignee.

(Argued April 6, 1887. Decided April 18, 1887.)

January Term, 1887, No 276, E. D., before Mercur, Ch. J., Gordon, Trunkey, Sterrett, Green, and Clark, JJ. Appeal by a creditor from a decree of the Common Pleas No. 1 of Philadelphia County dismissing exceptions to the report of an auditor appointed to settle the accounts of an assignee for benefit of creditors. Affirmed.

Edwin A. Merrick, the alleged assignee, denied that he had ever been assignee, and also asserted that even if he had been assignee, he had never received any property of the assigned estate.

The auditor, Joseph de F. Junkin, Esq., reported as follows:

This case comes before your auditor in a manner not usual with such proceedings. The record shows that the cause first arose in the court upon a petition of one Peter Crans, who claimed to be a creditor of one John Loutey, and who alleged that said Loutey had made an assignment to one Edwin A. Merrick, for the benefit of his creditors, upon October 23, 1874, and that such assignee had never stated any account of his trust, and praying that he might be compelled so to do, etc.

To this petition the said assignee filed an answer denying the facts; and depositions were taken at considerable length upon both sides, and finally the court ordered the said Edwin A. Merrick to file an account, as such assignee, which account was only filed after an order for attachment for contempt had issued against the said Merrick for not complying with the order; and the account when it was filed, was referred to your auditor to audit, settle and adjust. Your auditor found upon an examination of such account, that it was thus stated:

"Accountant never having received, as assignee, any of the estate of the said John Loutey, has nothing with which to charge himself," and then he claims credit for cost of filing the account, $5. And at the first meeting the question was raised and submitted to the auditor by his counsel, that Mr. Merrick was not the assignee of John Loutey.

Your auditor refused to pass upon such question as he considered that the above-mentioned action of the court was an adjudication of such question so far as he was concerned and that his sole duty was to audit, settle and adjust the account, as it was referred to him, and he so decided. This question, however, will be found as practically settled by your auditor's findings of fact, later on in this report, and there can be no doubt under the evidence but that Mr. Merrick did accept the assignment, and did act thereunder as assignee for the time being.

One other peculiar fact also needs mention, as will be seen by reference to the appearances of counsel noted: but one creditor appeared before the auditor, and claimed an interest in the as-

signed estate, *viz.*, Peter Crans, the person upon whose petition the court had ordered the account to be filed; so that the entire contest before your auditor narrowed itself down to those two persons,—Peter Crans seeking to surcharge the assignee and the latter as defending himself.

From the evidence submitted (all of which was reduced to writing and is hereto attached), your auditor finds the following facts: Peter Crans, who is a member of the bar of this county, of long standing, and John Loutey, an old merchant of this city, had been life-long friends and companions, and for years the professional relationship of counsel and client had existed between them. This close companionship continued up to about the end of the year 1874, and was severed by the circumstances (which grew out of the assignment) about to be mentioned. Early in that year, Mr. Loutey borrowed from Mr. Crans $8,000 in cash; according to Mr. Crans' account of this transaction this loan was to be secured by a first mortgage upon property of Mr. Loutey, No. 26 South Eighth street, Philadelphia, worth about $40,000; according to Mr. Loutey's version of what took place at that time, the mortgage was to be a third mortgage upon the same property, which Mr. Crans agreed to accept, if paid a high rate of interest.

As to which of the gentlemen gave the correct account of the transaction is not a vital fact in the case, and therefore your auditor does not feel called upon to decide between them. The record fact is that a bond and warrant of attorney in $8,000 secured by a third mortgage upon this property was executed. The mortgage was recorded October 23, 1874, and as will appear, Crans entered up the warrant; so that whether or not the security for which he bargained originally was received by him, he certainly did eventually accept and utilize the one which Loutey tendered; and that is all that need now be considered.

There was some attempt made to show that Mr. Crans had agreed to look only to this real estate for his money, but this was strenuously denied; and as there was no corroboration of the fact by such a restriction in the bond and warrant when it should have been, if actually agreed upon, your auditor finds from the absence of that circumstance and from the other facts, etc., before him that there was no restriction, and that Crans did not so agree.

In the month of October, 1874, Loutey found himself in fail-

ing circumstances, unable to meet his obligations, and, after consultations with various of his friends, including both Mr. Crans and Mr. Merrick, concluded to make a general assignment to the latter gentleman for the benefit of his creditors, the admitted purpose of such assignment among such friends being to prevent any judgments and executions being obtained summarily against him, and thus affording him ample time to make such terms as he could with his general merchandise creditors, such assignment being intended to work for the benefit of Mr. Merrick, Mr. Crans, and some other personal friends of Mr. Loutey, to whom he was indebted for large sums for borrowed money, Mr. Merrick's claim alone being over $12,000.

Accordingly, upon October 23, 1874, a deed of general assignment of all of Mr. Loutey's property for the benefit of all of his creditors was executed by him, and upon the following day, October 24, 1874, this deed was delivered to Mr. Merrick, who wrote upon it "Trust accepted" and then caused it to be recorded.

The property, the legal title of which was thus put into the name of Edwin A. Merrick, as trustee for Mr. Loutey's creditors, consisted of the contents of a dry goods store at No. 26 South Eighth street, which from the testimony seems to have been worth about from $15,000 to $20,000, and three various pieces of real estate, to wit:

1. Such store No. 26 South Eighth street, upon which were the said three mortgages, and which was subsequently sold at sheriff's sale and failed to realize enough to pay the first two mortgages, and the fund did not reach Mr. Crans' mortgage at all.

2. Property No. 526 Christian street, which was then and has since netted an annual rental of about $250. This property was free of encumbrance.

3. Property No. 1320 Warnock street, which was then and has since netted an annual rental of about $125. This property was also free from encumbrance.

Upon October 23, 1874, Peter Crans, who appears to have been the only one of the borrowed money creditors who had any kind of security, caused judgment to be entered in the sum of $16,000 to No. 674, of O. D. C. September term, 1874, upon the warrant accompanying his bond and mortgage; so that the real estate of John Loutey thus passed by the deed of assign-

ment to his assignee, charged with the lien of this judgment. Although he could have done so, Crans did not cause at that time execution to be issued upon this judgment against the personalty or realty of John Loutcy, but permitted the assignment to be recorded without taking any further step.

As a matter of fact after the acceptance of the assignment, the assignee did nothing further *qua* assignee or officially. No inventory and appraisement was filed. The assignment was not placed upon the court records.

No change was made in the conduct of the business at the store, but matters ran along there just as they had before, Mr. Merrick and Mr. Crans both being almost daily visitors at the store, but neither of them taking any part in its management and control. Although Mr. Merrick seems to have kept somewhat of a watch upon things there, until the last merchandise creditor had executed a release of his claim to Mr. Loutey and himself as assignee, when he ceased his constant visits to the store. The securing of the signatures to this release occupied Mr. Loutey some three months, and at last all the general merchandise creditors signed. Mr. Crans and Mr. Merrick were informed of the fact, both duly congratulated Mr. Loutey upon his success, and then Mr. Merrick considering that his duties had ceased, and that his responsibilities were at an end, as the purpose for which the assignment had been executed was fulfilled, no longer even kept watch upon the store transactions of Mr Loutey, but left him entirely to his own ways, as had been the case before the assignment was executed, and ceased his constant visits to the store, as also did Mr. Crans.

Mr. Crans was entirely aware of all of these facts, as they occurred; during this time he received at more or less regular intervals sums of money by way of interest upon his claim from Loutey, on more than one occasion the sum paid to him being taken out of the till of the store.

Once during this time he made an appeal to Mr. Merrick as assignee, representing that he was in urgent need of money, and asking Mr. Merrick to try and get him some. The latter replied to him that he understood he was to look to the real estate, upon which Mr. Crans ceased his demand, and turned away without making reply; upon another occasion, he voluntarily said to Mr. Merrick: "I do not care about getting any principal; I am satisfied so long as I get my interest."

This was the only occasion from October 23, 1874, to the day of the filing of the petition for a citation upon Mr. Merrick to file an account in 1885, that Mr. Crans ever made any demand of any kind upon Mr. Merrick, as assignee. No objection of any kind was made by Mr. Crans, to what was being done by Messrs. Merrick and Loutey, during these three months.

No claim was presented against the assigned estate by him. No demand was made for an inventory or bond from the assignee; no objection was made by him to the settlement, which was being effected with the merchandise creditors at 50 per cent of their claims, by means of the moneys of the assigned estate, and that borrowed elsewhere, but on the contrary he acquiesced therein and assented thereto, and he himself, as has been already noted, a number of times accepted payments out of the estate, moneys from Mr. Loutey, and gave the latter individual receipts therefor.

At the expiration of such time, what amounted to a practical redelivery of the assigned property by the assignee, to the assignor, took place with Mr. Crans' knowledge, and the assignee went about his own business, and the assignor again started up business publicly for himself, using such of the old assigned stock as was left and entering into many new contracts, buying new goods, etc., during all of which Mr. Crans stood by and made no dissent, knowing of all that took place, and tacitly at least assenting thereto, and himself doing nothing except from time to time, during the succeeding months up to March, 1876, demanding and receiving from Mr. Loutey various sums of money on account of what was due to him, until he was paid, altogether, about the sum of $1,300.

In the spring of 1876 Mr. Loutey again fell into financial difficulties; suits were brought against him, and judgments were about to be obtained and execution issued. This fact was communicated to Mr. Crans, and he promptly caused execution to be issued upon his aforesaid judgment, upon March 26, 1876, seized the entire stock and personal property of Loutey, caused the whole of the same to be sold at sheriff's sale, when it realized the sum of $6,679.87, which was received by him and credited upon his judgment. Mr. Merrick came to Mr. Crans at this time and asked to be allowed to share in this levy as a creditor of Loutey's but this Mr. Crans refused, making no pretense,

however, that this was property of the assigned estate, which he was about to sell.

The next fact that needs to be noticed is that in the spring of 1876 Mr. Loutey conveyed in fee to Mr. Merrick the Christian street property, as part payment of what he owed to him, and to Mr. Albertson in the same way, he conveyed the Warnock street property, Mr. Crans' judgment still being a lien upon such properties, although that fact appears to have been unknown to these grantees and Mr. Loutey.

Nothing further occurred in the history of this transaction until August 14, 1879, when a scire facias to revive the judgment of Mr. Crans was issued, returnable to the first Monday of September, 1879.

This was returned *nihil habet* and an alias scire facias was issued thereon, upon October 9, 1884, which was duly served and upon November 22, 1884, judgment was entered for want of an affidavit of defense; and the damages assessed at $4,675.72.

Upon the first Monday of February, 1885, under execution upon this revived judgment, the aforesaid properties on Christian street and Warnock street were exposed to sheriff's sale as the properties of John Loutey, seized in execution under this judgment, and were respectively purchased by the said Peter Crans for $60 and $40, etc.

From this general recital of facts of this cause, the following specific facts and conclusions therefrom clearly appear and flow:

John Loutey did make an assignment for the benefit of his creditors to Edwin A. Merrick, upon October 23, 1874, which the said Merrick duly accepted upon the next day, and thereby became an assignee for the benefit of Loutey's creditors, as to all of his property, real and personal, and became charged with all the duties and responsibilities incident thereto.

The circumstances that he gave no bond, filed no inventory or appraisement, made no change in the conduct of the business, and has not settled any account, in no way relieves him from his liability to duly account to any of the creditors of John Loutey for whose benefit such assignment was made and whose claims remain unsatisfied and chargeable against him. This is abundantly settled by the following cases, among others:

Seal v. Duffy, 4 Pa. 274, 45 Am. Dec. 691; Marks's Appeal, 85 Pa. 231; Golden's Appeal, 43 Phila. Leg. Int. 252.

The next important fact is equally clear: that by the assignment there passed to the assignee personal property, worth even at a forced sale $15,000, and real estate worth, above encumbrances (exclusive of Crans' judgment), $7,000, the net rentals of which properties have been, since 1874, averaging about $375 per year, and for which property and rentals the said assignee was therefore legally bound to account to anyone legally entitled to claim against the estate, and against him as trustee thereof; and that the account filed by him, under order of the court, and referred to your auditor, is not the correct and proper account of the trust property which did come into his possession, but that on the contrary he did actually receive the title to a large amount of property, real and personal, for which he was in duty bound to account, when so ordered by the court.

The first duty of your auditor would, therefore, naturally be to state such account from the evidence before him if possible, and ascertain the exact amount with which such assignee is chargeable.

But as, under the evidence submitted, the accurate statement of such account is impossible, and as, so far as appears from the evidence, there was undoubtedly received by such assignee far more than enough to pay the entire claim of the only creditor who appeared before the auditor and made claim against him, your auditor has deemed it unnecessary to formally restate an account for the assignee of all the moneys for which he was accountable, and in view thereof, under the evidence before him, finds that if the claim of Peter Crans is a valid one at all against Mr. Merrick, as assignee, the latter is liable to pay to him, as assignee, the sum of $4,575.72 with interest from November 22, 1884.

This claim of Peter Crans was resisted most strenuously, on behalf of Mr. Merrick, on the ground that Mr. Crans was estopped by his conduct and silence; and the consideration and decision of the question have caused your auditor no little difficulty. But a final and definite conclusion has been reached by him, and it appears plainly, and he so finds, that under all the circumstances of this case, Peter Crans is estopped from claiming any portion of the balance due upon his judgment, from Edwin

A. Merrick, as assignee of John Loutey. Whether Mr. Crans has any claim against Mr. Merrick, as the present holder of the title to the Christian street property, by reason of any lien which his judgment may have thereon, or by way of ejectment under his sheriff's title, of course does not come before your auditor, and is not passed upon. But that Mr. Crans has no just legal or equitable claim upon Mr. Merrick, as assignee, your auditor is clearly of opinion and so decides; the doctrine of estoppel is now so constantly and nonofficially invoked, and in so many ways, that a discussion of the same in this report would be out of place.

But a general statement of such principle, as applied to this class of cases, is most admirably set forth in the opinion in Hill v. Epley, 31 Pa. 331: "The general principle now is that where the conduct of a party has been such as to induce action by another, he shall be precluded from afterwards asserting, to the prejudice of that other, the contrary of that of which his conduct has induced the belief. The primary ground of the doctrine is that it would be a fraud in a party to assert what his previous conduct had denied, when on the faith of that denial others have acted. The element of fraud is essential either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up. . . .

"Silence in some cases will estop. . . . Thus, if one suffers another to purchase and expend upon a tract of land, and knows that that other has a mistaken opinion respecting the title to it, and does not make known his claim, he shall not afterwards be permitted to set up a claim against the purchaser. His silence then becomes a fraud. But silence without such knowledge works no estoppel. It is only when silence becomes a fraud that it postpones. . . . It is essential to its being allowed in any case, that it would work an injury. . . . If no one has been misled to his hurt, if no injury has arisen from the conduct, declarations, or silence of a party, he will not be estopped from contradicting them even though they would be conclusive against his right, if not contradicted."

As is said in Bigelow on Estoppel, 476: "Equitable estoppel consists in holding for truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth, and to deprive the party who has acted upon it of the benefit obtained." And upon page 484, that the term "representation"

includes both express and implied statements; and upon page 492, that "the estoppel may also arise as we have intimated from misleading silence, or passive conduct joined with a duty to speak."

Upon page 484 the author remarks: "The cases when carefully analyzed show that all of the following elements must actually or presumably be present in order to an estoppel by conduct: (1) There must have been a false representation, or a concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention that the other party should act upon it; (5) the other party must have been induced to act upon it."

Applying these tests to the case before us, what facts appear as to the conduct of Peter Crans with reference to the assigned estate and the assignee? Before the assignment was made, Mr. Crans was consulted about it and knew and approved of the purpose of it, to wit, to afford Mr. Loutey an opportunity of settling with his general creditors and continuing on in business. He knew that Mr. Loutey was allowed to remain in possession of all the property; that the assignee had filed neither bond nor inventory, was exercising no control over the estate, was allowing the money of the estate to be used in paying the general creditors; that a release to the assignor and assignee from all such creditors was being obtained on a certain basis, and that when it was obtained they were all settled with; the assignee abandoned even the constructive possession of the properties, and practically reconveyed and redelivered the entire estate back to the assignor, and yet, although consulted beforehand as to such course and assenting, even recommending it, he remains absolutely silent while it is going on, expresses no word of dissent thereto for more than ten years after it has happened, and when he asked the assignee for money, pending the assignment, and was told by him that he was "to look to the real estate," he expressed no dissent and by silence acquiesced therein as strongly as if he had assented thereto.

So much for his implied statements and passive conduct. Actively, he did much more; he assented to this arrangement in act by taking the money of the estate from the till of the store,

during the three months in which the assignee was in constructive possession.

He openly assented in words to all that was done, by telling the assignee he did not care about getting his principal, that he was satisfied as long as he got his interest.

He twice afterwards, upon the records of the court, openly and notoriously treated the assignment as at an end, admitting all that the assignee here claims by issuing an execution against the personal property left by the assignee in the possession of Mr. Loutey in 1876, and selling all of the same and appropriating the entire proceeds to his own claim; and subsequently, in the year 1885, in the same manner selling the real estate, in each instance, by the most emphatic actions, declaring that the property sold was not that for which he now claims to hold Mr. Merrick liable, but was property which belonged to Mr. Loutey, as of his own right. Viewing these facts under the summarized points of Mr. Bigelow, we find:

1. That the statement made by him to Mr. Merrick, that he did not want his principal, must have been false, in view of his present demand upon him; and when in reply to a request for money he was told that "he was to look to the real estate," it was plainly his duty to speak under the circumstances of the case, knowing all that he did about it, if he had had any intention of holding Mr. Merrick as liable, so that, both by active and passive conduct, there were false representations and concealment of material facts, and with the knowledge of the facts as before found that he had, it was clearly his duty to speak and demand settlement before the assets passed away from the assignee.

2. These representations, express and implied, were made by him with full knowledge of all the facts on his part. There was no pretense of any mistake or want of knowledge of either fact or law.

3. Mr. Merrick expressly asserts under oath that he was entirely deceived by what Mr. Crans said and did, and had no knowledge whatever that he had any claim against him or the assigned estate, and on the contrary was led to believe by his words and actions that he had no claim, and thus was entirely ignorant of the fact that Mr. Crans might or could claim against him, and was so kept in ignorance by Mr. Crans' own act.

4. As to what Mr. Crans' intention was in making such rep-

resentations and performing such action we cannot know excepting by reason. But in making them to the party interested, as a matter of law, he will certainly be presumed to have so done with a view that they should be acted upon, and, having made them, is certainly bound by them.

5. That Mr. Merrick was induced to and did act as he did in consequence of what Mr. Crans said and did, or left unsaid and undone, when he should have spoken or acted, is made very clear by Mr. Merrick's own testimony. And if Mr. Crans had at all intimated (as was his plain duty under the facts of the case, if he so intended) that he was going to require from Mr. Merrick an account of his trust, Mr. Merrick's course would have been very different. Thus each of the text-books' requisitions, constituting a case of perfect equitable estoppel, is entirely fulfilled.

And applying to Mr. Crans' conduct throughout this case, the language of Hill v. Epley, 31 Pa. 331: "It would be a fraud in him now to assert what his previous conduct had denied, when on the faith of that denial others have acted." And when to all this is added the overwhelmingly confirmatory evidence of his own acts, in seizing upon this very property, with which he now seeks to surcharge the assignee, and selling it as the assignor's and pocketing the proceeds, whereby he not only asserts in the most pointed way his knowledge of what the assignee did, but so doing stamps such acts of the assignee with his approval, by publicly on record asserting that the property is not the assignee's in trust, but that of the assignor,—need any more be said to demonstrate that this claimant has placed between himself and this assignee, such a barrier as forever precludes him from recovering from the assignee any of the sum which he asserts is still due to him from Mr. Loutey? It was argued on the part of Mr. Crans that even if he was estopped by his conduct as to the personal property of the assigned estate, the assignee was still liable to account for the real estate and its rentals. But it will be remembered that it is found that at the time Mr. Loutey sold out the stock under his execution, in 1876, the real estate was conveyed to Mr. Merrick and another creditor, in part payment of their claims. This was done under the same supposition, brought about by Mr. Crans' conduct, that he had no claim upon the assigned estate.

*Non constat* but that these two creditors could have secured

payment *aliunde,* if they had not been deceived by Mr. Crans' conduct, and therefore the same estoppel applied here as well. They were induced to act by his conduct, and would now be injured if he was allowed to deny it. Your auditor would add the further reflection, that a claim so stale as this, and brought forward for the first time, more than ten years after it should have been made, without any adequate explanation as to the cause of delay, is not one which commends itself to either a court of law or equity, and your auditor has felt that in scrutinizing it great care should be taken to ascertain that it was sound in every particular before a decision could be made in its favor, and that in all questions of doubtful decisions the leaning should be in favor of the assignee, rather than of the claimant.

Upon no other theory can the continued course of Mr. Crans' conduct during these eleven years be accounted for than that originally he knew that he had no just or legal claim against Mr. Merrick, as assignee, and therefore made none; but that years having gone by, and facts having been forgotten, or for some other worse reason, he now seeks to recover a claim from a man who owes him nothing. Such claims not only should not be favored, but should receive the strongest condemnation, in the opinion of your auditor, unless clearly sustained by evidence, as this one certainly was not.

As to the costs of this audit, your auditor is of opinion that they should be borne by the assignee, or the assigned estate. It was the assignee's duty to have performed many acts which he did not do, and when the estate was redelivered by him to the assignor, he should have deducted sufficient funds to have met the expenses of an account, etc., which it was his duty to file and have confirmed; and if he had admitted in his account, that was obtained after so much difficulty, that he had received assets of the estate, as was the fact, much of the difficulty and many of the meetings before the auditor would have been avoided.

Your auditor is therefore of the opinion that he should be surcharged with sufficient funds to meet the expenses of this audit, as follows:

| | | |
|---|---|---|
| Cost of advertising audit | $ 14 | 20 |
| Prothonotary's costs | 13 | 75 |
| Auditor's fee | 350 | 00 |
| | $377 | 95 |

Due notice of the foregoing report being prepared was submitted to the parties in interest, and exceptions on the part of Peter Crans only have been received by the auditor.

Peter Crans filed the following exceptions to the report of the auditor:

1. The auditor erred in reporting that the deed of assignment was devised by the assignor, the assignee, and Crans, a judgment creditor of the assignor, for the purpose of enabling the assignor to obtain from his merchandise creditors a composition of his debts to them; and that it was not intended to be for the benefit of all the assignor's creditors, including Crans, there being no evidence to warrant such a finding.

2. That even if Crans knew such to be the object of the assignment, public policy forbids that either of the parties to it should be permitted to prove a secret purpose, contrary to that expressed in the deed itself and the auditor erred in attaching any weight to it.

3. Voluntary assignments for the benefit of creditors are so regulated by statute and governed by principles of equity that when duly executed and delivered, neither the assignor nor his assignee, nor both together, can defeat the trust thereby created in favor of creditors; and the auditor erred in reporting that Crans was excluded from the benefit of the trust by their acts.

4. The auditor erred in reporting that Crans, by his silence (when the assignor, after the assignment, with the assent of the assignee, used a portion of the assigned personal estate in settling with his merchandise creditors), was estopped from afterwards asserting his rights under the assignment.

5. That even if such silence or assent by Crans would estop him from holding the assignee to account for that portion of the assigned personal estate used in such settlement, the auditor erred in reporting that it also estopped him from holding the assignee to an account for the large amounts of rents he afterwards, as such assignee, received from the assigned real estate, which rents the law required to be applied to Crans' judgment liening the real estate yielding them, to the exclusion of general creditors.

6. The auditor erred in reporting that the assignee could devest himself as assignee of the title to the assigned real estate, by afterwards acquiring from the assignor title thereto in his own

right, without it first having been reconveyed to the assignor, after the payment of all the debts of the assigned estate, in the manner provided by § 2 of the act of assembly of May 4, 1864, relating to assigned estates.

7. The auditor erred in reporting that the assignee was relieved from accounting for the rents received by him from the assigned real estate, because more than ten years after the assignment Crans levied upon the assignor's interest therein, and at a sheriff's sale under his judgment purchased that interest for the sum of $100.

The auditor filed a supplemental report sur exceptions, as follows:

Exceptions to the foregoing report of your auditor were duly filed on behalf of Peter Crans, and after careful consideration, your auditor has seen no reason, as given in said exceptions or otherwise, to alter his report as heretofore made; and therefore he dismisses said exceptions. But in so doing he desires to add a few words as to the same.

First. The first exception commences by saying: "The auditor erred in reporting that the deed of assignment was devised by the assignor, the assignee, and Crans." Nowhere in his report does the auditor so find. The only finding which could be taken as even possibly intimating such a thing is where it is said: "In the month of October, 1874, Loutey found himself in failing circumstances, unable to meet his obligations, and after a consultation with various of his friends, including both Mr. Crans and Mr. Merrick, concluded to make a general assignment to the latter gentlemen for the benefit of his creditors, the immediate purpose of such an assignment among such friends being to prevent any judgments and executions being obtained summarily against him, and thus affording him ample time to make such terms as he could with his general merchandise creditors, such assignment not being intended to work for the benefit of Mr. Merrick, Mr. Crans and some other personal friends of Mr. Loutey to whom he was indebted in large sums for borrowed money."

By this portion of his report your auditor does not, or at least certainly did not intend to, convey the idea that the plan was devised by Crans; but he did intend to report, and does so now, that the purpose of Mr. Loutey in making the assign-

ment, and of Mr. Merrick in accepting it and in carrying it out, was as set forth in the report, and that all of the evidence taken together shows that Mr. Crans knew of this intention before it was consummated, assented to it, or at least made no dissent to it, and by his entire subsequent conduct about the matter has shown that he felt himself bound by it for more than ten years after the purpose of the assignment was accomplished, and by reason of all of such conduct is now estopped from holding the assignee liable to him personally.

Second. The second exception requires no special comment, excepting that the auditor does not find that the parties to such deed of assignment alone were aware of a secret purpose, but that the man who now seeks to hold the parties liable was also aware of it, and that therefore between him and them there can be no question of public policy.

Third. The third exception would undoubtedly be good if there were other creditors here claiming against this assignee and seeking to uphold the trust; but as there is but one whose conduct, as found by the auditor, has estopped him as against this assignee, the general principle in this exception has no application to the case, because the auditor does not find that Crans was excluded from the benefit of the trust by the acts of the assignor or assignee, but by his own acts.

Fourth. The fourth exception is misleading and does not accurately state the findings of the report. The silence of Crans was but one of the elements in the case making up the reasons which estop him, and therefore the exception has no weight.

Fifth. The fifth exception assumes that the assignee did receive rentals of real estate. The report does not so find, but in it the auditor finds that there were certain rentals which, if the assignee had been liable to Crans, he should have received and accounted for; but he finds that upon the whole case Crans had no claim whatever against the assignee *qua* assignee; that his entire conduct, both passive and active, estopped him from claiming from the assignee the proceeds of either real or personal estate, and not alone, as ingeniously set forth in the exception, that his assent to the settlement made by the assignee with his general creditors estopped Peter Crans from receiving the proceeds of real estate. [The auditor intended to report, and, if he did not, does so now, that as between Crans and the

assignee no trust existed, but that the assignee was in no way accountable to Crans as such.]

Sixth. The auditor does not report as set forth in the sixth exception, nor does he so report as is set forth in the seventh exception.

Your auditor would further remark, in conclusion, that in passing upon the large amount of testimony given before him, and in making his findings of facts therefrom, he was largely influenced by what he believed to be the credibility of certain witnesses where their statements came in conflict with the statements of other witnesses, and considerable of the testimony taken was credited with very little weight.

The exceptions to the auditor's report were overruled by the court, and the report was confirmed, and Peter Crans appealed.

The assignments of error specified the dismissal of the exceptions, and the confirmation of the report and the supplemental report, and the portion of the latter inclosed in brackets.

*R. O. Moon* and *John M. Arundell,* for appellant.—It would be a novel and dangerous doctrine that a deed of voluntary assignment for the benefit of creditors, and expressly providing, as this deed does, that it is in trust for all the assignor's creditors, should be not only flatly contradicted, but nullified as to appellant, one of the beneficiaries named in it, upon the testimony of the assignor or assignee or both, as to what they intended, prior to its execution, its purpose to be. Parol evidence to overthrow a deed has never gone thus far in Pennsylvania. Phillips v. Meily, 106 Pa. 536; Harris v. Hay, 111 Pa. 562, 4 Atl. 715; Wilson v. M'Neal, 10 Watts, 422; North & West Branch R. Co. v. Swank, 105 Pa. 555; Cronister v. Cronister, 1 Watts & S. 442; Creigh v. Beelin, 1 Watts & S. 83; Shepherd v. Watson, 1 Watts, 35; Jones v. Wood, 16 Pa. 25; Richardson v. Gosser, 26 Pa. 335.

In reporting that as between appellant and the assignee no trust existed, the auditor was clearly in error.

The second and third assignments of error are to the dismissal by the court of the exceptions to the auditor's report embodying simple propositions of law, *viz.:* "That even if Crans knew such to be the object of the assignment, public policy forbids that either of the parties to it should be permitted to prove a secret

purpose contrary to that expressed in the deed itself;" and that "voluntary assignments for the benefit of creditors are so regulated by statute and governed by principles of equity that, when duly executed and delivered, neither the assignor nor assignee nor both together can defeat the trust thereby created in favor of creditors." Golden's Appeal, 110 Pa. 581, 1 Atl. 660, citing Read v. Robinson, 6 Watts & S. 329; Seal v. Duffy, 4 Pa. 274, 45 Am. Dec. 691. See also Johnson v. Herring, 46 Pa. 415; Marks's Appeal, 85 Pa. 231.

The fourth assignment of error should be sustained. Com. v. Moltz, 10 Pa. 527, 51 Am. Dec. 499; Patterson v. Lytle, 11 Pa. 53; Hill v. Epley, 31 Pa. 331; Woods v. Wilson, 37 Pa. 379; 1 Greenl. Ev. 204; Crest v. Jack, 3 Watts, 240, 27 Am. Dec. 353; Beaupland v. McKeen, 28 Pa. 124, 70 Am. Dec. 115; Lawrence v. Luhr, 65 Pa. 241; Bispham, Eq. 284; Jordan's Appeal, 107 Pa. 84; Dean's Appeal, 98 Pa. 101.

Unless the law imposes upon the creditor some definite duty requiring action upon his part to keep the assignee to the performance of his duties, no penalty can be imposed upon him for its neglect.

The sixth assignment of error should be sustained.

The auditor seems to have overlooked the well-settled principle of law that a trustee cannot set up a title in himself acquired after the creation of the trust, adverse to the *cestui que trust*. Fiske v. Sarber, 6 Watts & S. 31; Van Epps v. Van Epps, 9 Paige, 241; M'Ginn v. Shaeffer, 7 Watts, 415.

No appearance for appellee.

PER CURIAM:

The able report of the auditor confirmed by the court clearly proves that the claim of the appellant cannot be supported on correct equitable principles.

Decree affirmed and appeal dismissed, at the costs of the appellant.